# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-175


TAQUETTE L. CRAWFORD AND
LARRY COLLIER, JR.

VERSUS

CHARLES RAY PEARSON, M.D.



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 64,516
HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and John E. Conery, Judges.



**AFFIRMED.**

**Samuel Jenkins**
**Attorney at Law**
**2419 Kings Highway**
**Shreveport, Louisiana 71103**
**(318) 636-4266**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Taquette L. Crawford**
**Larry Collier, Jr.**

**William Daniel Dyess**
**870 Main Street**
**Many, Louisiana 71449**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Taquette L. Crawford**
**Larry Collier, Jr.**

**Robert I. Baudouin**
**Blue Williams, L.L.C.**
**3421 North Causeway, Suite 900**
**Metairie, Louisiana 70002**
**(504) 830-4966**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Khaled Ghorab, M.D.**

**Robert W. Robison, Jr.**
**Watson, Blanche, Wilson & Posner**
**505 North Boulevard**
**Baton Rouge, Louisiana 70802**
**(225) 387-5511**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Sabine Medical Center**

**Gary J. Delahoussaye**
**Gachassin Law Firm**
**Post Office Box 80369**
**Lafayette, Louisiana 70598-0369**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Charles Ray Pearson, M.D.**

**CONERY, Judge.**

Plaintiffs, Taquette Crawford and Larry Collier, Jr., filed the underlying medical malpractice action seeking damages associated with the death of their infant son. Following a bench trial, the trial court rendered judgment in favor of the defendant health care providers finding, in part, that Plaintiffs failed to establish the relevant standard of care with respect to each defendant. The trial court further determined that the weight of the evidence established that there was no breach of the standard of care. Plaintiffs appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

As established both in the record and by the parties' joint stipulation, Larry Collier, III (Larry) was hospitalized on four occasions between his December 30, 2008 birth and his October 21, 2009 death. Each hospitalization was associated with pneumonia and/or asthma.

The last such hospitalization, which occurred October 11, 2009 through October 13, 2009, was at Rapides Regional Medical Center where the young boy was discharged with a diagnosis of atypical viral pneumonia with instructions to his parents to continue him on medications as prescribed.

The medical care at issue in this case occurred only slightly more than a week later, on October 21, 2009, when Plaintiffs arrived at the Sabine Medical Center Emergency Department (Sabine Medical Center) at 11:37 a.m. with nine-month old Larry. Ms. Crawford reported that Larry could "hardly breath[e]." The "Pediatric Nursing Assessment," noted that "when patient coughs kind [sic] whistle type sound" and "adventitious breath sounds."

Dr. Charles Pearson evaluated Larry at 11:50 a.m., noting the child's recent hospitalization due to pneumonia. Dr. Pearson reported that Larry showed shortness

of breath, cough, congestion, and that the infant was fussy. Dr. Pearson's physical exam revealed the presence of stridor,[1] but that the child was not wheezing. A chest x-ray ordered by Dr. Pearson revealed a "foreign body," lodged in the esophagus in the "transverse lie" position, i.e., sideways. The object was determined to be a penny. Dr. Pearson ordered a surgical consult on an emergency basis.

Dr. Khaled Ghorab performed the surgical consult ordered by Dr. Pearson and recommended removing the coin by esophagoscopy.[2] Ms. Crawford consented to the procedure. Larry was taken into the operating room at 1:30 p.m. and "inhalation induction" began, with Trent Friedel, CRNA (Certified Registered Nurse Anesthetist) administering the anesthesia. Nurse Anesthetist Friedel noted that Larry had respirations of 32 and "$O_2$ sats" of 98%. The nurse anesthetist also documented copious clear oral secretions and "breath sounds pos[sible] obstruction of airway due to the coin." Medications prior to anesthesia included an albuteral nebulizer and decadron.

The record establishes that oral intubation was successful, as was the surgical procedure, which lasted only twelve minutes. The coin was removed at 1:52 p.m. Dr. Ghorab's operative report indicates that after the coin was located, the forceps were not initially able to "grab" the coin, causing it to slip downwards to the stomach. Dr. Ghorab explained that he was able to grab it "right away," and it was removed with "no problems. After the scope was removed, however, Larry's $O_2$ "sats" fell to 90, and Nurse Anesthetist Friedel began to "manually breath the patient

---

[1] The record indicates that stridor is a "whistling" sound.

[2] Dr. Ghorab described the procedure as used in this instance as the introduction of an endoscope (an image sensing instrument) into the esophagus with the intent to grab and remove the foreign object. He explained that if the object was difficult to remove, the object could be pushed into the stomach for capture and for removal.

by himself."[3]  Dr. Ghorab remarked in his operative report that it seemed like the child "went into severe bronchospasm."[4]

The medical team, including Dr. Pearson, attempted resuscitative efforts for one hour and six minutes.  When attempts proved unsuccessful, Larry was pronounced dead at 2:56 p.m.  A resulting autopsy listed the cause of death, as a "[r]are complication of removal of a lodged esophageal foreign body (a penny)."

Alleging medical malpractice, Plaintiffs initially requested a Medical Review Panel be formed to consider their malpractice claim against Sabine Medical Center and Dr. Ghorab, both qualified health care providers under the terms of the Medical Malpractice Act (MMA), La.R.S. 40:1231.1.  Plaintiffs also filed a February 2013 medical malpractice suit against Dr. Pearson, who was not a qualified health care provider under the MMA.  The Medical Review Panel rendered a unanimous opinion in February 2014 finding that, "[t]he evidence does not support the conclusion that the defendant[s], Khaled M. Ghorab, M.D. and Sabine Medical Center, failed to meet the applicable standard of care as charged in the complaint."[5]  Plaintiffs

---

[3] Nurse Anesthetist Friedel explained that he attempted to improve the child's ventilation through the intubated tube.  Steroids and adrenaline were used to assist in the resuscitative process. Despite the attempt, the child's lung function would not return.

[4] The medical providers referred to "bronchospasm" as a narrowing of the airway.

[5] The medical review panel rendered "Written Reasons for Conclusion," stating:

**As to Sabine Medical Center:**

> As to the failure to supervise, we find that there is no evidence in the records provided to us that the hospital deviated from the standard of care.

**As to Dr. Khaled M. Ghorab:**

> The panel finds that there was no evidence that Dr. Ghorab acted below the standard of care.  The child was apparently in respiratory distress.  The child was appropriately evaluated and Dr. Ghorab responded promptly.  He urgently took the patient to the operating room to remove the coin and try to relieve the respiratory distress.  He was successful in removing the coin.  Unfortunately, the patient sustained a rare complication from esophagoscopy resulting in bradycardia

thereafter amended the initial petition, adding Dr. Ghorab and Sabine Medical Center as defendants in the malpractice suit initially filed against Dr. Pearson alone.

The matter proceeded to a two-day bench trial in February 2021 against all defendants. Plaintiffs argued that Defendants breached the applicable standard of care as they failed to treat what Plaintiffs contended was Larry's underlying asthma condition prior to or concurrent with the surgical procedure. Plaintiffs maintained that their breach of the standard of care put the child at risk for bronchospasm, leading to his death. Plaintiffs relied on the deposition testimony of Dr. Mark Levin, their sole expert witness, in seeking to meet their burden of proving the elements of medical malpractice, including the applicable standard of care. Dr. Levin focused on Larry's history of asthma and asserted, generally, that Defendants failed to properly treat his presenting symptoms. Dr. Levin maintained that it was Larry's asthmatic condition, not the coin in the child's esophagus, causing the symptoms of shortness of breath and whistling sound when he breathed. He testified that the asthmatic condition needed to be controlled before any attempt was made to remove the coin as it placed the child at a risk for desaturation, i.e., a drop in blood oxygen concentration. Dr. Levin denied that the presence of the coin in the esophagus presented an emergency condition and suggested that the coin could have possibly dropped from the esophagus to the child's stomach without intervention.

With regard to Sabine Medical Center, Dr. Levin suggested that the hospital breached its standard of care in failing to have a physician anesthesiologist in place to supervise Nurse Anesthetist Friedel. He also criticized Nurse Anesthetist

---

broncospasm, cardiac dysrhythmia resulting in a fatal cardio-pulmonary event. The use of a CRNA was appropriate under the circumstances. There is no evidence that Desflurane was used in this operation. We find there was no deviation from the standard of care.

Friedel's purported use of Desflurane, a general anesthic, in his treatment of the child and suggested that the drug's use was one of the factors leading to the child's death as it could cause bronchospasm.

In response, Defendants challenged Dr. Levin's testimony, noting that Dr. Levin, as an internist, oncologist, and hematologist, lacked a depth of experience with pediatric patients, particularly those in an emergency setting. Moreover, in addition to Defendants testifying on their own behalf and presenting the opinion of the Medical Review Panel, Defendants further presented experts respective to their own specialties of emergency care and surgery within the critical care context. Each expert sharply disputed Dr. Levin's description of Larry's condition, and each disputed that Defendants breached the standard of care. With regard to supervision of Nurse Anesthetist Friedel, Sabine Medical Center pointed out that La.R.S. 37:930 specifically provides that a nurse anesthetist can practice under the supervision of any physician and, in this case, Dr. Ghorab served in that role.

Following the presentation of evidence, the trial court ruled in favor of Defendants. Although the trial court did not render specific reasons for ruling, the resulting final judgment indicated that "Plaintiffs did not establish the relevant standard of care with respect to each and every Defendant and that the weight of the evidence that there was no breach of a standard of care[.]" Plaintiffs appealed.

## ASSIGNMENTS OF ERROR

In their brief to this court, Plaintiffs assert that:

I.      The trial court erred in determining that the plaintiffs[] did not meet their burden of proof that the defendants['] actions fell below the appropriate standard of care.

II.     The trial court erred in finding that the hospital was not liable for the negligent actions of an "independent contractor."

5

*Standard of Care*

Plaintiffs first challenge the trial court's determination that they did not meet their burden of proving that Defendants' actions deviated from the appropriate standard of care. As they did at the trial court, Plaintiffs rely on Dr. Levin's broad-based opinion that it was asthma, not the presence of the coin in Larry's esophagus, which caused his respiratory condition. Dr. Levin maintained that the medical team was required to treat the asthma first before proceeding with the removal of the coin. Denying that the coin presented an emergency, he suggested that it possibly could have passed on its own. The alleged failure to treat the underlying asthmatic condition, Plaintiffs contend, transfers to the entire "team," including the nurses and nurse anesthetist.

Louisiana Revised Statutes 9:2794(A) requires that medical malpractice plaintiffs must prove by a preponderance of the evidence: (1) the applicable standard of care; (2) the physician's breach of that standard; and (3) a causal link between the resulting injury and that breach. *See also Burchfield v. Wright*, 17-1488 (La. 6/27/18), 275 So.3d 855. The supreme court has set forth the general rule that expert testimony is required to establish the applicable standard of care and whether that standard was breached, except where the allegedly negligent act is so obvious that a lay person can infer negligence in the absence of expert testimony. *See Pfiffner v. Correa*, 94-924 (La. 10/17/94), 643 So.2d 1228. In this case, Plaintiffs attempted to satisfy their burden regarding standard of care and related breach through the use of Dr. Levin's deposition testimony.

While Plaintiffs suggest that the trial court erred in its conclusions regarding the applicable standard of care, "a trial court decision as to whether a plaintiff

established the appropriate standard of care and a breach thereof is pursuant to the manifestly erroneous, clearly wrong, standard of review." *Eggins v. Christus Health Cent. La.*, 21-339, p. 9 (La.App. 3 Cir. 2/9/22), 333 So.3d 1270, 1277. An appellate court only reverses a trial court's conclusion that a plaintiff failed to establish either the medical standard of care or a breach of that standard of care if there is no reasonable basis for the finding. *Id.* Following review of the record, we find that the record supports the trial court's conclusion.

While Plaintiffs relied on Dr. Levin's opinion, which he offered from the perspective of an internist, Defendants testified on their own behalf, offered the unanimous Medical Review Panel opinion in their favor, and presented the testimony of numerous physicians who testified with expertise in specialties targeted to the issues at hand.

For instance, Dr. George Martinez, a board certified physician in both internal medicine and emergency medicine, discounted Dr. Levin's expertise in the emergency room setting as well as Dr. Levin's opinion that the presence of the coin did not present an emergency. Dr. Martinez instead testified that the coin, although in the esophagus, had to be immediately removed as it was compressing the trachea, the air passageway. He denied that the child's asthma could have been further treated before the removal of the coin and testified that Dr. Pearson acted appropriately both in his evaluation of the child and in his immediate pursuit of a surgical consult.

Further, Dr. James Knoepp, a board certified surgeon, was presented as an expert in the fields of general surgery, surgical critical care, and critical care. Dr. Knoepp also served as a member of the Medical Review Panel reviewing the case. While Dr. Pearson did not appear as a defendant before the panel, Dr. Knoepp

7

explained that he reviewed Dr. Pearson's care and found that the emergency room physician acted appropriately in his evaluation and in his seeking of an x-ray of the child's chest. Like Dr. Martinez, Dr. Knoepp found the presence of the coin in the esophagus presented an emergent situation. He explained that it was the coin that was causing Larry's difficulty breathing. On this point, Dr. Knoepp observed that Plaintiffs had administered some of Larry's respiratory medicines before arrival at the emergency room, yet the child's breathing difficulties continued. Given those circumstances, Dr. Knoepp found no merit in Dr. Levin's suggestion that the placement of the coin posed no emergency, and Dr. Knoepp found no fault in Dr. Ghorab's decision to address the removal of the coin.

Dr. Knoepp further rejected Dr. Levin's position that Nurse Anesthetist Friedel breached the standard of care in his purported use of Desflurane as the general anesthetic. Pointedly, Dr. Knoepp reviewed the medical record and found that Sevoflurane was used, not Desflurane. Dr. Knoepp noted that while Desflurane would potentially cause an irritation, Sevoflurane, an alternative anesthetic agent, is more generally used and would be potentially therapeutic, although he did not elaborate as to why. Nurse Anesthetist Friedel confirmed in his own testimony that he used Sevoflurane and stated that he would never give Desflurane to a nine-month old infant.

Finally, Defendants presented the testimony of Dr. Dean Edell in the fields of pediatric, pediatric emergency medicine, and pediatric pulmonology. Like Drs. Martinez and Knoepp, Dr. Edell explained that the presence of the coin presented an emergency. He went further, however, testifying that the failure to remove the coin would have been "malpractice" as its presence in the airway would have caused

8

complete constriction of the airway and closed or partially closed the trachea.[6]  Dr. Edell denied that Larry's upper respiratory distress was due to asthma, given his respiratory rate.   Likewise, the presence of stridor, the whistling sound commemorated on the ER notes, is indicative of an upper airway obstruction according to Dr. Edell.   Pointedly, Dr. Edell stated that leaving the coin in place "wasn't an option … the coin had to come out."  Dr. Edell explained that the passage of the coin, as suggested by Dr. Levin, was unlikely, stating that "it's possible to win Powerball too, but you're probably not going to."  Dr. Edell referenced the autopsy report's indication of an esophageal tear and explained that, in his opinion, the coin was embedded and had already begun to erode the esophagus.   He stated that had Larry coughed due to the presence of the coin, it could have entered the airway and posed a suffocation risk.

Dr. Edell explained that he had performed as many as 7,000 bronchoscopies[7] in his career and that Larry's death resulted from an extremely rare complication of that surgery.  He testified that, given the child's respiratory history, Larry was prone to a series of the "cascade of events" that caused his death.  When asked whether Dr. Levin was qualified to comment on this case, Dr. Edell reported that:

> Dr. Levin may be a very capable oncologist.  His understanding of the pediatric airway and some of his statements that he brought up and some – many of his conclusions – I'm just speechless.  I just don't even know how to comment.  They're just – it's – they were just – just not grounded in physiology in a pediatric airway.

The death of Plaintiffs' infant son is indisputably tragic, as Defendants concede.  The trial court, however, was presented with conflicting expert opinions

---

[6] In this regard, Dr. Edell explained that the size of the coin almost completely occluded the esophagus, causing it to bulge and impede on the adjacent trachea.

[7] Bronchoscopy involves the placement of a thin tube affixed with a camera into the lungs for visualization of the air passageways.

regarding the status of the child's condition at the time of arrival at the hospital and during Defendants' subsequent medical treatment. The trial court plainly did not accept the opinions offered by Dr. Levin, Plaintiffs' expert. In such an instance of conflicting expert opinions concerning compliance with the standard of care, an appellate court affords great discretion to the trier of fact. *See Price v. Erbe USA, Inc.*, 09-1076 (La.App. 3 Cir. 6/9/10), 42 So.3d 985, *writ denied*, 10-1628 (La. 10/8/10), 46 So.3d 1271. Following review of the record, we find that the record supports the trial court's determination in this case. We therefore leave the trial court's ruling undisturbed.

*Certified Registered Nurse Anesthetist*

In their second assignment of error, Plaintiffs note the general proposition that a hospital is responsible for the negligence of its employees and, additionally, a hospital's responsibility extends to the selection of a competent staff. Plaintiffs assert that although Nurse Anesthetist Friedel suggested at trial that he is an independent contractor and not an employee of the hospital, no contract was offered in this regard. Given its attendant responsibilities, Plaintiffs argue, Sabine Medical Center was required to have Nurse Anesthetist Friedel supervised by an attending anesthesiologist.

We first point out that the trial court made no findings regarding independent contractor status. Additionally, we have above maintained the trial court's findings regarding standard of care and breach of the standard of care, a finding that the trial court made as to "each and every Defendant." Finally, while Plaintiffs suggest that further supervision was required, La.R.S. 37:930 specifically addresses supervision of a nurse anesthetist and provides, in pertinent part,

A. No registered professional nurse shall administer any form of anesthetic to any person under his care unless the following conditions are met:

. . . .

(3) The registered nurse administers anesthetics and ancillary services *under the direction and supervision of a physician* or dentist who is licensed to practice under the laws of the state of Louisiana.

(Emphasis added.) In this case, the testimony was clear that Nurse Anesthetist Friedel served under the direction and supervision of Dr. Ghorab. The statute otherwise makes no reference to a requirement that the nurse anesthetist be supervised by a physician anesthesiologist as suggested by Plaintiffs.

Given those circumstances, we leave the trial court's decision undisturbed.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assigned to the Plaintiffs/Appellants, Taquette Crawford and Larry Collier, Jr.

**AFFIRMED.**