951 So.2d 182 (2006)
Wayne TEMPLET
v.
The STATE OF LOUISIANA Through The DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, V.J. Bella and W.R. Whittington.
No. 2005 CA 1903.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
*183 Mark E. Falcon, Daniel L. Avant, Baton Rouge, Counsel for Plaintiff/Appellee Wayne Templet.
Amanda G. Clark, Shelly D. Dick, Jason A. Bonaventure, Baton Rouge, Counsel for Defendants/Appellants State of Louisiana through Department of Public Safety and Corrections, V.J. Bella, and W.R. Whittington.
Before: KUHN, GAIDRY, and WELCH, JJ.
GAIDRY, J.
This appeal challenges a grant of a partial summary judgment deciding some, but not all, of the liability issues presented to the trial court. We conclude that the certification of the judgment as final and appealable pursuant to Article 1915(B) of the Code of Civil Procedure was improper, and we dismiss the appeal.

BACKGROUND
On March 3, 2000, Wayne Templet filed this lawsuit against his former employer, the State of Louisiana through the Department of Public Safety and Corrections, its appointing authority, W.R. Whittington, and V.J. Bella, the State Fire Marshall. Therein, he averred that he was terminated from his position in the Fire Marshall's office in violation of his constitutional right of free speech. Templet sought reinstatement to his former position, and to recover lost wages, compensatory damages, punitive damages, credits and emoluments of his position, as well as attorney fees.
Some of the facts forming the basis of this litigation are undisputed. From late 1996 through October of 1998, Templet authored and disseminated a series of anonymous letters alleging that Bella had taken inappropriate actions in connection with his administration of the Fire Marshall's office. The typewritten letters were sent to numerous governmental offices and officials, including Colonel Whittington. On February 3, 1998, the Office of State Inspector General issued a report, approved by Governor Foster, which made findings of seven specific instances of wrongdoing on the part of Bella. Thereafter, Bella was reprimanded for his inappropriate actions.
On December 29, 1997, Colonel Whittington directed an Internal Affairs investigation into the source of the anonymous letters received by his office in envelopes with handwritten addresses. Colonel Whittington directed Bella to order Templet to submit handwriting samples to Internal Affairs. On October 8, 1998, Templet was interviewed by Internal Affairs and provided the requested handwriting samples, but denied having written the anonymous letters. Thereafter, handwriting analysis based on the sample provided by Templet and the handwritten addresses on the envelopes containing the anonymous letters were compared, and an expert concluded the addresses on the envelopes were written by Templet. On January 22, 1999, Templet again was interviewed by Internal Affairs, and he denied *184 having addressed or mailed the anonymous letters.
By letter dated March 15, 1999, Templet was terminated from his position with the Fire Marshall's Office, effective the following day. In the letter, Colonel Whittington stated that he concluded as a fact from the investigation that Templet did address the envelopes containing the anonymous letters. In the termination letter, Whittington stated that Templet's repeated denials of having addressed the envelopes violated provisions of the Code of Conduct and Ethics prohibiting the making of false statements and the willful withholding of information from a report or statement. Templet's actions, Whittington concluded, violated the Code of Conduct and Ethics requirement that every employee cooperate with an Internal Affairs investigation, and also violated another section of the Code of Ethics prohibiting conduct unbecoming an employee.
In his lawsuit, Templet claimed that the cited reasons for his termination were devised to conceal the true reason for his termination; namely, his exercise of his constitutional right to free speech and comment upon matters of public concern. He alleged that he had a constitutionally protected right to author the letters and to not disclose his authorship to Bella and Whittington. Templet averred that the actions of Bella and Whittington in conducting the investigation into the source of the letters with the intent to punish and identify the author of the letters, in requiring him to submit handwriting samples, and in terminating him from his position, were all actions taken in retaliation of his free speech rights.
In the petition, Templet alleged that Whittington and Bella were liable in their official and individual capacities. He further alleged that their actions were "willful, knowing, intentional and in callous disregard" for his constitutional rights.
In response, Bella and Whittington asserted the defense of qualified immunity. They also averred that any injuries or damages suffered by Templet were caused by his own wrongful acts, reckless misconduct, and/or negligence. Furthermore, they insisted, Templet was fired not for exercising his right of free speech, but for giving false testimony to an Internal Affairs investigator with the State Police in violation of departmental policies.
Thereafter, Templet filed a motion for summary judgment, asserting that he was entitled to judgment as a matter of law on the issue of the defendant's liability for violating his right to engage in anonymous free speech in addressing matters of public concern, a right guaranteed to him by the First Amendment to the United States Constitution and Article 1, Section 7, of the Louisiana Constitution. In support of the motion, Templet submitted a statement of uncontested material facts, Whittington's and Bella's depositions, eight anonymous letters he authored, the State Inspector General's Final Report, the termination letter, as well as his own deposition testimony and an affidavit admitting that he is the author of the anonymous letters.
In opposition to the motion, defendants urged that genuine issues of material fact exist, including: whether the letters constitute free speech on matters of public concern, whether the State's interest in protecting the operations and reputation of one of its departments outweighs Templet's right to voice his opinion, and the motivation for Templet's termination. Defendants insisted that Templet was terminated not for the content of his letters, but because he lied in sworn statements during an Internal Affairs investigation.
On June 27, 2005, the trial court granted Templet's motion for partial summary *185 judgment in open court. The trial court did not set forth specific findings in granting the motion for summary judgment on the issue of liability, and subsequently signed a judgment decreeing that the motion for partial summary judgment "is hereby granted." Thereafter, defendants sought to take a devolutive appeal of the judgment, asserting that the summary judgment on the issue of liability, leaving only the issue of damages, was appealable as a matter of right. Alternatively, defendants requested that the trial court certify the judgment for immediate appeal. Defendants later withdrew the motion for a devolutive appeal and substituted a suspensive appeal.
On September 12, 2005, this court observed there had been no designation by the trial court that the judgment was a final judgment after an express determination that there was no just reason for the delay as required by Article 1915(B) of the Louisiana Code of Civil Procedure. This court issued a rule to show cause, requiring the parties to demonstrate there had been a designation of the judgment in accordance with Motorola, Inc. v. Associated Indemnity Corporation, XXXX-XXXX, p. 16 (La.App. 1 Cir. 10/22/03), 867 So.2d 723, 732. Defendants then supplemented the record to include the trial court's September 29, 2005 certification of the judgment for an immediate appeal. Therein, the trial court found there was no just reason for delaying an appeal for these reasons: (1) the adjudicated issue, liability, and the unadjudicated issue, damages, were easily severed for the purposes of the appeal; (2) factors such as judicial economy, expense of the parties, and undue delay all weighed in favor of immediate appeal; and (3) there was no potential for the appellate court to be obligated to consider the same issue a second time. On November 15, 2005, this court recalled the rule to show cause and maintained the appeal.

APPELLATE JURISDICTION
Appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. Motorola, Inc. v. Associated Indemnity Corporation, XXXX-XXXX, p. 4 (La.App. 1 Cir. 4/30/03), 867 So.2d 715, 717. A partial summary judgment rendered pursuant to La.Code Civ. P. art. 966(E) may be immediately appealed during an ongoing litigation only if it has been properly designated as final by the trial court. La.Code. Civ. P. art. 1915(B). Although the trial court designated the partial summary judgment as a final one under Article 1915(B), that designation is not determinative of this court's jurisdiction. Van ex rel. White v. Davis, XXXX-XXXX, p. 2 (La.App. 1 Cir. 2/16/01), 808 So.2d 478, 480. Thus, this court's jurisdiction to decide this appeal hinges on whether the certification was appropriate. Because the trial court gave explicit reasons in certifying the appeal, we are to review the certification applying the abuse of discretion standard. R.J. Messinger, Inc. v. Rosenblum, XXXX-XXXX, p. 13 (La.3/2/05), 894 So.2d 1113, 1122.
Historically, our courts have had a policy against multiple appeals and piecemeal litigation. Article 1915 attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. Thus, in considering whether a judgment is properly designated as final pursuant to Article 1915, a court must take into account judicial administrative interests as well as the equities involved. R.J. Messinger Inc., XXXX-XXXX at p. 13, 894 So.2d at 1122. Factors to be considered by a trial court, although not exclusive, when determining whether a partial judgment *186 should be certified as appealable include: 1) the relationship between the adjudicated and unadjudicated claims; 2) the possibility that the need for review might or might not be mooted by future developments in the trial court; 3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and 4) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like. Nevertheless, the overriding inquiry for the trial court is whether there is no just reason for the delay. R.J. Messinger, Inc., XXXX-XXXX at p. 14, 876 So.2d at 1122-23.
Applying these precepts, we find the trial court abused its discretion in certifying the partial judgment as a final judgment pursuant to Article 1915(B). Plaintiff's motion for summary judgment requested judgment on only one liability issue raised in this litigation, that is, whether he was terminated for exercising his right to free speech. However, there are outstanding issues that must be adjudicated by the trial court before liability can be determined. These issues include the merits of Whittington's and Bella's qualified immunity defense, whether they can be held liable in their individual capacities, and whether any of the defendants are liable for punitive damages. In short, the merits of these liability issues, which necessarily involve introduction of evidence on the parties' conduct surrounding the termination, must be resolved before the trial court can proceed to litigate the damage issue. Thus, contrary to the trial court's reasons for certifying the judgment, this is not a case where the liability issues and the damage issues are easily severed for appeal and trial purposes.
Where a partial summary judgment decides only some aspects of a liability claim, this court has routinely held that the ruling is not one properly certified for an immediate appeal under Article 1915(B). See Young v. City of Plaquemine, 2004-2305 (La.App. 1 Cir. 11/4/05), 927 So.2d 408 (holding that a trial court abused its discretion in designating as final a partial summary judgment determining causation in a negligence action; reasoning that allowing an immediate appeal from a judgment finding that a plaintiff has met some, but not all, of the elements of a negligence liability claim only serves to encourage piecemeal adjudication and appeals, causing delay and judicial inefficiency); Daigle & Associates, APLC v. Lafayette Insurance Company, XXXX-XXXX (La.App. 1 Cir. 6/29/05), 916 So.2d 1078 (holding that a partial summary judgment finding coverage under one section of an insurance policy, where coverage also was asserted under other sections of the insurance policy, should not have been certified as final, as the appeal from that judgment would not resolve claims arising from multiple coverage issues based on alternate theories of recovery under different sections of the same policy); Leray v. Nissan Motor Corporation in U.S.A., XXXX-XXXX (La.App. 1 Cir. 6/10/05), 916 So.2d 260, writ denied, XXXX-XXXX (La.1/27/06), 922 So.2d 554 (holding the trial court improperly certified a partial summary judgment allowing the fault of non-party tortfeasors to be quantified by a jury, noting that the issues of liability, degree of liability, and damages remained to be adjudicated). Cf. R.J. Messinger, Inc. v. Rosenblum, 2003-2209 (La.App. 4 Cir. 5/1/05), 904 So.2d 760 (holding that a trial court did not err in certifying a partial summary judgment resolving all liability issues, leaving only the amount of damages properly recoverable for determination by the trial court).
Likewise, we find that under the circumstances of this case, allowing an immediate appeal of a decision deciding one, but not *187 all, of the liability issues raised by this lawsuit only serves to encourage multiple appeals and piecemeal litigation, causing delay and judicial inefficiency. We find there are no compelling reasons for certifying the judgment as final and immediately appealable that would outweigh these judicial administrative interests. Because the partial judgment is not a final one, it may be revised at any time prior to the rendition of the judgment adjudicating the remaining issues in the case. La.Code Civ. P. art. 1915(B)(2).

CONCLUSION
Because the trial court improperly designated the partial summary judgment rendered herein as a final judgment pursuant to La.Code Civ. P. art. 1915(B), we dismiss the appeal for lack of appellate jurisdiction. The case is remanded for proceedings consistent with this ruling. Assessment of appeal costs shall await final disposition of this matter.
APPEAL DISMISSED; REMANDED.