PETTIGREW, J.
| sIu this case, the Louisiana Department of Public Safety and Corrections (“DPSC”) seeks review of portions of a March 15, 2011 judgment by the trial court that (1) sustains in part the exception raising the objection of prematurity filed by 84 death row inmates (referred to collectively as the “defendants-in-reconvention”), to the extent it requests a declaration that DPSC’s lethal injection protocols[1] are not “rules” under the Louisiana Administrative Procedure Act (“LAPA”), La. R.S. 49:950 et seq., and (2) sustains the exception raising the objection of lis pendens filed by Cedric Jacobs, who is one of the defendants-in-reconvention. For the reasons that follow, we affirm in part, reverse in part, render in part, and remand for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
In the principal action, death row inmate, Nathaniel Code, petitioned the trial court for a declaration that DPSC’s lethal injection protocols were “rules” as defined in LAPA and that the lethal injection protocols were invalid because they were not adopted in compliance with LAPA.[2] In response to Code’s petition, DPSC filed a reconventional demand, requesting a declaration that DPSC’s lethal injection protocols were not “rales.” DPSC later amended and supplemented its reconventional demand to add all other inmates serving on death row as defendants-in-reconvention.[3] DPSC also expanded the scope of *1122 its declaratory relief to include a declaration that DPSC’s rules, which were promulgated more than two years before the demand, were not subject to attack pursuant to La. R.S. 49:954(A).
|4The defendants-in-reconvention filed numerous exceptions, including exceptions raising the objection of prematurity and Us pendens,[4] In urging lis pendens, defendant-in-reconvention Cedric Jacobs argued “the identity of issues and parties between [his] earlier-filed petition for post-conviction relief and [DPSC’s] later-filed reconventional [demand] compelled] the conclusion that the doctrine of lis pendens prohibited] [DPSCs] reconventional demand as to [him.]” In their prematurity exceptions, the defendants-in-reconvention urged that DPSC’s petition for declaratory relief was premature because DPSCs demand failed to establish that there was a justiciable, live controversy before the court and that the dispute was of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
On February 22, 2011, among other matters heard, the trial court sustained Jacobs’ exception raising the objection of lis pendens and sustained the prematurity exception filed by the defendants-in-recon-vention “to the extent of the request for a declaration that [DPSCs] protocols are not ‘rules’ under [LAPA].” The trial court overruled the prematurity exception “to the extent of the request for a declaration that all rules enacted more than two years ago are not subject to challenge.” Judgment was signed accordingly on March 15, 2011.[5]
On March 28, 2011, DPSC filed a timely notice of intent to seek supervisory writs of the portions of the March 15, 2011 judgment that sustained Jacobs’ lis pen-dens exception and partially sustained the prematurity exceptions filed by defendants-in-reconvention. Also on that same day, DPSC filed a “Motion For New Trial Or, In The Alternative, Motion To Certify Partial Judgment As Final,” which was set |fifor hearing on May 2, 2011. Prior to the hearing on DPSCs motion, the trial court signed a Consent Judgment on April 28, 2011, which provides, in pertinent part, as follows:
[T]he Court hereby FINDS that its partial grant of the Exception of Prematurity is sufficiently distinct from the remaining issues in this suit such that there is no just reason for delay and this partial judgment should be designated as final. See La. C.C.P. art. 1915(B)(1).
Accordingly, IT IS ORDERED, ADJUDGED, AND DECREED that the Court’s March 15, 2011 Judgment ordering that the Defendants-in-Reconvention’s Exception of Prematurity was overruled on the sole question of Plaintiff-in-Reconvention’s request for a declaration that those rules attached to its Demand as Exhibit 1 are not subject to attack because they were promulgated more than two years prior to the date of the Demand and was granted to the extent that Plaintiff-in-Reconvention requested a declaratory judgment that the protocols attached as Exhibit 2 to its Demand are not “rules” as defined by *1123 [LAPA], is certified as a partial final judgment.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Court’s March 15, 2011 Judgment is hereby amended to reflect that the Second Amended and Supplemental Recon-ventional Demand was dismissed as to Defendant-in-Reconvention Cedric Jacobs by virtue of the granting of the Exception of Lis Pendens.
On May 13, 2011, DPSC filed a motion and order for appeal from the March 15, 2011 judgment of the trial court.[6] DPSC urged the following assignments of error for our review:
1. Whether a court can take judicial notice of an alleged shortage of a lethal injection drug when the fact is neither generally known within the territorial limits of the trial court nor capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned;
2. Whether a request for declaratory judgment is premature due to a shortage of a lethal injection drug;
3. Whether the Trial Court should have denied the Exception of Prematurity to the extent that the DPSC seeks a ruling on that portion of the Protocols having nothing to do with the lethal injection drug, sodium thiopental;
4. Whether an identity of parties exists for the purpose of lis pendens when the first-filed lawsuit is pending against a single warden of a correctional center, who has no authority to adopt, amend, or repeal administrative rules, and the second-filed lawsuit is pending against the agency, a necessary party in actions regarding the validity of agency rules; and
|fi5. Whether, for the purpose of lis pendens, a rulemaking violation is the proper subject of a post-conviction application pursuant to [La.Code Crim. P.] art. 930.3.
DISCUSSION

Appellate Jurisdiction

Although a trial court designates a judgment as final under La.Code Civ. P. art. 1915(B), that designation is not determinative of an appellate court’s jurisdiction. The appellate court’s jurisdiction to decide an appeal hinges on whether the certification was appropriate. Templet v. State ex rel. Dept. of Public Safety and Corrections, 2005-1903, p. 6 (La.App. 1 Cir. 11/3/06), 951 So.2d 182, 185. The proper standard of review for an order designating a judgment as final for appeal purposes, when accompanied by explicit reasons, is whether the trial court abused its discretion. R.J. Messinger, Inc. v. Rosenblum, 2004-1664, p. 13 (La.3/2/05), 894 So.2d 1113, 1122.
Historically, our courts have had a policy against multiple appeals and piecemeal litigation. Article 1915 attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. Thus, in considering whether a judgment is properly designated as final pursuant to Article 1915, a court must take into account judicial administrative interests as well as the equities involved. Factors to be considered by a trial court, although *1124 not exclusive, when determining whether a partial judgment should be certified as ap-pealable, include: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the trial court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and (4) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Nevertheless, the overriding inquiry for the trial court is whether there is no just reason for the delay. Templet, 172005 — 1903 at 6-7, 951 So.2d at 185-186 (citing R.J. Messinger, Inc., 2004-1664 at 13-14, 894 So.2d at 1122-1123). Based upon our consideration of all relevant factors, we find that the trial court’s designation was appropriate and that the jurisdiction of this court has been properly invoked.

Lis Pendens (Assignments of Error Nos. 4 and 5)

In his application for post-conviction relief filed against Warden Burl Cain, Jacobs urged, among other issues, that the death row lethal injection protocol is a “rule” under LAPA and the protocol/rule is invalid (and therefore cannot be used to execute Jacobs) because it was not promulgated as required by LAPA. The same issue was raised in DPSC’s reconventional demand for declaratory relief. The trial court found that the identity of parties’ requirement of lis pendens had been satisfied and sustained Jacobs’ exception, ordering his dismissal from DPSCs recon-ventional demand, without prejudice. In its oral ruling, the trial court noted as follows:
This is an exception of lis pendens filed by ... Jacobs. [DPSC] objects or contests this exception on ... various grounds, particularly, that there’s no identity of parties because Warden Burl Cain is the defendant in the petition for post conviction relief, and [DPSC] is the plaintiff [in] reconvention here. Cases have generally held that when a State employee is sued in a representative capacity it’s as though the Department in which that person serves has been sued[.] This Is a little bit different because it’s under a criminal statute, but still I think the identity of [parties’] requirement has been met.
On appeal, DPSC avers that the trial court erred in granting the lis pendens exception because the two actions, i. e., Jacobs’ application for post-conviction relief filed against Warden Burl Cain and DPSCs reconventional demand for declaratory relief regarding its lethal injection protocols, lacked identity of parties and identity of interests. DPSC also argues that the trial court erred in failing to find that Jacobs could not properly attack DPSCs lethal injection protocols in a post-conviction proceeding.[7]
Louisiana Code of Civil Procedure article 531 provides:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the | Rsame capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution, of any of *1125 the suits, but the first final judgment rendered shall be conclusive of ail.
Under Article 531, when two or more suits are pending in Louisiana courts “on the same transaction or occurrence, between the same parties in the same capacities,” the defendant may have ail but the first suit dismissed by filing a declina-tory exception raising the objection of Us pendens. See La.Code Civ. P. art. 925(A)(3). Since the requirements for establishing Us pendens conform to the requirements of res judicata, the test for Us pendens is whether a final judgment in the first suit would be res judicata in the subsequently filed suit. Under La. R.S. 13:4231, res judicata bars relitigation of a subject matter arising from the same transaction or occurrence as a previous suit.[8] In determining whether this requirement is met, the crucial inquiry is not whether the second suit is based on the same cause of action as the first suit, but whether the second suit asserts a cause of action that arises out of the same transaction or occurrence that was the subject matter of the first suit. Leon v. Moore, 98-1792, p. 4 (La.App. 1 Cir. 4/1/99), 731 So.2d 502, 504, writ denied. 99-1294 (La.7/2/99), 747 So.2d 20. The preclusion doctrines are stricti juris, thus, any doubt concerning the application of res judicata or Us pendens must be resolved against their application. Jensen Const. Co. v. Department of Transp. and Development, 542 So.2d 168, 171 (La.App. 1 Cir.), writ denied, 544 So.2d 408 (La.1989).
An identity of parties exists whenever the same parties, their successors, or others appear, so long as they share the same “quality” as parties. Mandalay Oil & Gas, L.L.C. v. Energy Development Corp., 20010993, pp. 16-17 (La.App. 1 Cir. 8/4/04), 880 So.2d 129, 140, writ denied, 2004-2426 (La.1/28/05), 893 So.2d 72. Thus, the jurisprudence does not require that the parties in the two lawsuits be Lphysically identical as long as they share the same “quality” as parties. Jensen, 542 So.2d at 171.
While this court appreciates the creativity of Jacobs’ counsel in arguing his position on the Us pendens issue, we find that Jacobs’ previously filed application for post-conviction relief in his criminal suit and the later reconventional demand for declaratory relief by DPSC are not “between the same parties in the same capacities.” La.Code Civ. P. art. 531. At the outset, we note that DPSC is not a “part/’ in an application for post-conviction relief as provided in La.Code Crim. P. arts. 926 and 927. Louisiana Code of Criminal Procedure article 926(B)(2) provides that the petition for postconviction relief shall allege “The name of the custodian, if known, or if not known, a designation or description of him as far as possible.” In pertinent part, La.Code Crim. P. art. 927(A) provides:
If an application alleges a claim which, if established, would entitle the petitioner to relief, the court shall order the custodian, through the district attorney in the parish in which the defendant was convicted, to file any procedural objections he may have, or an answer on the merits if there are no procedural objec- *1126 tons,, within a specified period not in excess of thirty days.
Moreover, the “Uniform Application For Post-Conviction Relief’ adopted by the Louisiana Supreme Court in 1976 only includes the name of the inmate petitioner and his “custodian” in the caption of the application. The application describes the “custodian” as “Warden, Superintendent, Jailor, or authorized person having custody of petitioner” and provides for service to be made on the “Custodian” and the “District Attorney” for the appropriate judicial district court. See La. Sup.Ct. Rules, Appendix A. DPSC is not included anywhere in the uniform application for post-conviction relief or in Articles 926 and 927.
Jacobs’ application for post-conviction relief names only one respondent, Burt Cain, Warden of the Louisiana State Penitentiary. According to the record, Jacobs was housed at that facility, thus making Warden Cain his custodian. In contrast, the instant case involves a reconventional demand for declaratory relief that presents two questions for this court to resolve, both of which concern administrative rulemaking by DPSC. Pursuant |10to La. R.S. 15:1171, DPSC may adopt, in accordance with LAPA, “administrative remedy procedures for receiving, hearing, and disposing of any and all complaints and grievances by adult or juvenile offenders ...” Only the agency alone, ie., DPSC, can adopt, amend, or repeal a rule, and the agency alone, not an employee of the agency, is a necessary party in all actions contesting the validity or applicability of an administrative rule. See La. R.S. 49:951(2), 49:953, and 49:963(A)(2). Thus, a suit against Warden Cain is not enough for lis pendens purposes, as it is clear that Warden Cain and DPSC do not share the same “quality” as parties. Accordingly, we reverse that portion of the March 15, 2011 judgment of the trial court that sustained Jacobs’ exception raising the objection of lis pendens, as well as that portion of the April 28, 2011 consent judgment that dismissed the Second and Amending and Supplemental Reconventional Demand as to Cedric Jacobs.

Prematurity Exception (Assignments of Error Nos. 2 and 3)

In the instant case, DPSC sought a declaratory judgment decreeing that its lethal injection protocols were not “rules” as provided in LAPA and that DPSC’s rules, which were promulgated more than two years prior to the demand, were not subject to attack pursuant to La. R.S. 49:954(A). In response thereto, defendants-in-reconvention filed an exception raising the objection of prematurity, urging that DPSCs petition was premature because there was no justiciable, live controversy for the court to consider and because the dispute was not of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The trial court denied the prematurity exception as to DPSCs request to declare that its rules enacted over two years ago were not subject to challenge, but sustained the exception as to DPSCs request for a declaratory judgment that its lethal injection protocols were not “rules” under LAPA.
Louisiana Code of Civil Procedure article 1871 authorizes the judicial declaration of “rights, status, and other legal relations whether or not further relief is or could be claimed.” A declaratory judgment action is designed to provide a means for adjudication of rights and obligations in cases involving an actual controversy that has not reached the stage where either party can seek a coercive remedy. Chauvet v. City of Westwego, 599 So.2d 294, 296 (La.1992). The function of a declaratory judgment is simply to establish the rights of the parties or express the *1127 opinion of the court on a question of law without ordering anything to be done. ANR Pipeline Co. v. Louisiana Tax Com’n, 2001-2594, p. 9 (La.App. 1 Cir. 3/20/02), 815 So.2d 178, 185, affirmed and remanded, 2002-1479 (La.7/2/03), 851 So.2d 1145. But our jurisprudence has limited the availability of declaratory judgment by holding that “courts will only act in cases of a present, justiciable controversy and will not render merely advisory opinions.” Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 701 (La.1993).
Because of the almost infinite variety of factual scenarios with which courts may be presented, a precise definition of a justiciable controversy is neither practicable nor desirable. Wooley v. State Farm Fire and Cas. Ins. Co., 2005-1490, p. 5 (La.App. 1 Cir. 2/10/06), 928 So.2d 618, 621-622. However, a justiciable controversy has been broadly defined as one involving “adverse parties with opposing claims ripe for judicial determination,” involving “specific adversarial questions asserted by interested parties based on existing facts.” Prator v. Caddo Parish, 2004-0794, p. 6 (La.12/1/04), 888 So.2d 812, 816. A justiciable controversy for purposes of declaratory judgment is one involving uncertain or disputed rights in “an immediate and genuine situation,” and must be a “substantial and actual dispute” as to the legal relations of “parties who have real, adverse interests.” Id. at 7-9, 888 So.2d at 817.
The dilatory exception raising the objection of prematurity provided in La.Code Civ. P. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination, because an action will be deemed premature when it is brought before the right to enforce it has accrued. LaCoste v. Pendleton Methodist Hosp., L.L.C., 2007-0008, p. 5 (La.9/5/07), 966 So.2d 519, 523. The burden of proving prematurity is on the exceptor. LaCoste, 2007-0008 at 6, 966 So.2d at 523. The standard of review of such a judgment is that of manifest error. Pinegar v. Harris, 2008-1112, p. 10 (La.App. 1 Cir. 6/12/09), 20 So.3d 1081, 1088.
| [2In the instant case, defendants-in-re-convention assert that DPSC’s action for a declaratory judgment was brought prematurely. This assertion is based on the fact that necessary future amendments to the protocols constitute contingencies rendering declaratory judgment inappropriate at this time. Additionally, defendants-in-re-convention maintain that DPSC’s demand is wholly lacking in immediacy and incapable of terminating any controversy.
The jurisprudence in Louisiana is well settled that a declaratory judgment should not be rendered if a contingency could change the existing facts in a case. See American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La.1993). In this case, the defendants-in-reconvention have claimed that these protocols are rules under the LAPA and are, therefore, unenforceable unless the LAPA procedures were followed by DPSC when it approved those protocols. As is evidenced by the record, the protocols have been amended numerous times over the last twenty years. The trial court noted the “great possibility” that they would be amended again in the future.[9] With regard to the drugs listed in *1128 DPSC’s lethal injection protocol, the trial court indicated that the one drug identified by name, sodium thiopental, has been “taken off the market completely,” in effect making any ruling on the protocol premature. The trial court reasons that if a declaratory judgment | ^concerning the lethal injection protocols at issue had been issued by the trial court based on the existing facts, that judgment would have been rendered moot by any amendments to the current protocols. However, the issue brought by DPSC is broader than the specific wording of the current protocols, including the description of the particular drugs that are to be used for lethal injections. DPSC seeks a declaration that its protocols, either in their current form or as amended in the future, do not constitute rules and, therefore, DPSC did not and does not have to follow the rulemaking procedures set out by the LAPA. This is a request for a ruling that will terminate a major portion of the controversy in this case and will obviate future challenges to DPSC’s protocols on this basis. Therefore, one way or the other, the issue is not premature.
Furthermore, the statutory scheme that controls the conditions and procedures to be followed when a death sentence has been rendered provides an answer to DPSC’s request for a declaration on this issue. In particular, La. R.S. 15:569[10] controls the place and the manner of execution, stating in Subsection B that:
Every sentence of death executed on or after September 15, 1991, shall be by lethal injection; that is, by the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead. Every sentence of death imposed in this state shall be executed at the Louisiana State Penitentiary at Angola. Every execution shall be made in a room directly cut off from view of all except those permitted by law to be in said room.
More to the point, it clearly states in Subsection D that:
The provisions of the Administrative Procedure Act, R.S. 49:950, et seq., shall not apply to the procedures and policies concerning the process for implementing a sentence of death. [Emphasis added.]
According to this statutory language, the DPSC’s internal guidelines or “protocols,” which establish the process for implementing a sentence of death, are not subject to the LAPA’s rulemaking provisions. For this reason, we reverse that portion of the March 15, 2011 judgment that sustained the prematurity exception *1129 filed by the | udefendants-in-reconvention “to the extent of the request for a declaration that [DPSC’s] protocols are not ‘rules’ under [LAPA]” and render judgment in accordance with La. R.S. 15:569(D), declaring that DPSC’s “protocols” concerning the process for implementing a death sentence are not subject to the LAPA.[11]
CONCLUSION
For the above and foregoing reasons, we reverse that portion of the March 15, 2011 judgment of the trial court that sustained Cedric Jacobs’ exception raising the objection of lis pendens and that portion of the April 28, 2011 consent judgment of the trial court that dismissed the Second Amended and Supplemental Reconventional Demand as to Cedric Jacobs. We reverse that portion of the March 15, 2011 judgment that sustained the prematurity exception filed by the defendants-in-recon-vention “to the extent of the request for a declaration that [DPSC] protocols are not ‘rules’ under [LAPA].” We further render judgment and declare in accordance with La. R.S. 15:569(D) that DPSC’s “protocols” concerning the process for implementing a sentence of death are not subject to the LAPA. We remand to the trial court for further proceedings. All costs associated with this appeal are assessed equally among all defendants-in-reconvention.
WRIT DISMISSED; JUDGMENT REVERSED IN PART, AFFIRMED IN PART, RENDERED IN PART, AND REMANDED.

. DPSC’s internal guidelines for lethal injections are referred to as "protocols."

. Code’s petition was subsequently dismissed, without prejudice, on an exception raising the objection of lack of subject matter jurisdiction filed by DPSC.

.DPSC filed a "First Amended and Supplemental Reconventional Demand for Declaratory Judgment” and a "Second Amended and Supplemental Reconventional Demand for Declaratory Judgment.” The Second Amended and Supplemental Reconventional Demand for Declaratory Judgment is the pleading subject to the exceptions filed by the defendants-in-reconvention.

. We note from the record that all of the defendants-in-reconvention urged prematurity exceptions. Only one defendant-in-reconvention, Cedric Jacobs, urged an exception raising the objection of lis pendens.

. In the March 15, 2011 judgment, the trial court also overruled exceptions raising the objections of lack of subject matter jurisdiction, improper joinder of parties, no cause of action, and no right of action filed by the defendants-in-reconvention. The trial court also denied a motion to strike and motion for sanctions. None of these issues are before this court on review.

. In an interim order dated July 27, 2011, the previously filed writ in this matter was referred to the merits of the appeal. See Code v. Louisiana Dept. of Public Safety and Corrections, 2011-0601 (La.App. 1 Cir. 7/27/11) (unpublished writ action). Because the writ application and the instant appeal arise out of the same judgment, and the issues raised in the writ are now before us on appeal, we hereby dismiss the writ application as moot.

. Because we conclude that the trial court erred in sustaining Jacobs' Us pendens exception, we need not reach the issue of whether DPSC's lethal injection protocols can be properly attacked in an application for post-conviction relief.

. Prior to the amendments to Louisiana’s res Judicata law that became effective in 1991, a judgment in a prior suit precluded a second suit only if it involved the same parties, the same cause of action, and the same object or demand as the prior suit. However, under La. R.S. 13:4231, as amended, res Judicata now bars relitigation of a subject matter arising from the same transaction or occurrence as a previous suit. See Leon v. Moore, 98-1792, p. 4 (La.App. 1 Cir. 4/1/99), 731 So.2d 502, 504, writ denied, 99-1294 (La.7/2/99), 747 So.2d 20.

. During an August 26, 2010 hearing on various exceptions, including an exception raising the objection of vagueness as to DPSC’s original reconventional demand, the trial court made the following statements regarding the prematurity exception that was also pending at that time:
*1128 My problem is that the allegations in [DPSC’s] petition [are] that these rules have been changed ... often over the last twenty years.
Those were judicial admissions made by [DPSC]. If they were erroneous, they need to amend their petition to so state. But for now, it is a judicial confession that these rules have been changed so many times over the last twenty years, including very recently.
And it would be, in this court’s opinion, a monumental waste of legal talent and effort, as well as court time and effort, for a declaration that the current rules comply with [LAPA] and so forth, when there is no scheduled execution at this time, and the possibility that the rules could be amended.
It's argued, of course, by the State that there's no proof that the rules would be amended, but there’s no proof that they won't be either. The track record of them being amended, according to what’s now in the petition, twelve or thirteen times in the last twenty years, would seem to indicate there’s a great possibility of them being amended in the future.

. We note that neither the parties nor the trial court made any reference to La. R.S. 15:569 in its arguments or decision.

. Because we have rendered judgment in favor of DPSC on the exception of prematurity, we pretermit any discussion of DPSC’s first assignment of error, i.e., that the trial court erred in taking judicial notice of the unavailability of the drug sodium thiopental.