GUIDRY, J.
12In this medical malpractice action, defendants, Horace L. Mitchell, M.D., The NeuroMedieal Center, and Louisiana Medical Mutual Insurance Company, appeal from a judgment of the trial court granting a judgment notwithstanding the verdict in favor of plaintiffs, Lorraine T. Cobb and Joseph Cobb, on the issue of informed consent. For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
In November 2001, Lorraine Cobb began experiencing pain in her neck, right shoulder, and arm. After receiving treatment from her primary care physician and an orthopedic surgeon, Mrs. Cobb was referred to Dr. Horace Mitchell, a neurosurgeon at The NeuroMedieal Center for surgical evaluation. Mrs. Cobb presented to Dr. Mitchell on February 1, 2002, complaining of constant neck and right arm pain since November 2001. After physical examination of Mrs. Cobb and an evaluation of her January 8, 2002 MRI, Dr. Mitchell diagnosed her with cervical spon-dylosis and radiculopathy. Dr. Mitchell recommended that Mrs. Cobb undergo a cervical discectomy and fusion at three levels, C4-5, C5-6, and C6-7.
Mrs. Cobb sought a second opinion from Dr. Allen Joseph, a neurosurgeon also practicing at the NeuroMedieal Center, who diagnosed Mrs. Cobb with spinal sten-osis at C6-7 and C4-5 and concurred with Dr. Mitchell that Mrs. Cobb would be most appropriately served with a multi-level anterior cervical discectomy and fusion.
Thereafter, Mrs. Cobb returned to Dr. Mitchell’s office on March 8, 2002, to sign a consent form for the surgical procedure. The consent form was presented to Mrs. *694 Cobb by Dr. Mitchell’s physician’s assistant, John Merrill. The form contained a description of the procedure, the purpose of the procedure, the patient’s diagnosis, and a listing of the risks generally associated with any surgical | ^procedure, including death, brain damage, disfiguring scars, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, infection, bleeding, and pain. The form noted that a listing of additional risks associated with the patient’s particular procedure and a listing of reasonable alternatives to the procedure were attached to the consent form. Mrs. Cobb signed the consent form on that date and signed the attachment detailing the risks associated with an anterior cervical discectomy with or without fusion and the alternative treatments. Dr. Mitchell also signed the consent form on the same date at 1:55 p.m.
Dr. Mitchell performed the cervical dis-cectomy and fusion at C4-5, C5-6, and C6-7 on March 11, 2002. Immediately following the surgery, Mrs. Cobb reported increased right-sided weakness and pain. Thereafter, Mrs. Cobb also complained of pain and weakness in her left and right lower extremities.
Mrs. Cobb filed a claim against Dr. Mitchell with the Louisiana Patient’s Compensation Fund on March 3, 2003. Following submission of the claim to a medical review panel, the panel rendered an opinion unanimously finding that the materials submitted to the panel failed to support the conclusion that Dr. Mitchell or the NeuroMedical Center deviated from the appropriate standard of medical care. The panel also noted that the medical record contains a written and signed operative consent.
Thereafter, on March 24, 2005, Mrs. Cobb and her husband, Joseph Cobb, filed a petition for damages in the Nineteenth Judicial District Court, asserting that immediately following the March 11, 2002 surgery, Mrs. Cobb developed neurological symptoms consistent with spinal cord contusion and compression. Mrs. Cobb asserted that symptoms in her upper extremities were much worse than prior to surgery and now extended down into the lower extremities. Mrs. Cobb alleged that over one year following the surgery, she had not significantly improved.
Lin the petition, Mrs. Cobb alleged that Dr. Mitchell breached the standard of care in the management of her condition by employing improper surgical techniques and/or committed surgical errors causing further neurological damage and/or failed to obtain proper and adequate informed consent under the circumstances. The plaintiffs named Dr. Mitchell, his insurer LAMMICO, and the NeuroMedical Center as defendants.
Following a jury trial on July 26, 2011 through July 29, 2011, the jury returned a verdict in favor of the defendants, finding that the defendants did not breach the standard of care owed by them to Mrs. Cobb and that the defendants did not fail to obtain proper informed consent from Mrs. Cobb. The trial court signed a judgment in conformity with the jury’s verdict on August 24, 2011.
On September 6, 2011, the plaintiffs filed a motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial, asserting that the jury’s verdict was contrary to the law and the evidence. Following a hearing on the motions, the trial court denied the motion for JNOV by way of a minute entry, finding that the standard to be applied to such action had not been met. However, with respect to the motion for new trial, the trial court ordered the parties to brief only the issue of jury confusion vel non with respect to Subsection E of La. R.S. 40:1299.40 within ten days. Following a hearing on the mo *695 tion for new trial, the trial court signed a judgment on December 29, 2011, vacating the minute entry denying the motion for JNOV and granting a JNOV on the issue of informed consent, finding juror confusion existed with respect to the instruction and the law of informed consent, particularly Subparagraph E, which must be read in pari materia with the other subpara-graphs of the statute. The court further granted a motion for new trial to visit the issue of quantum and costs.
The defendants filed a motion and order for supervisory writs with the trial court, which set a return date for January 20, 2012. The defendants subsequently | sfiled a writ application with this court on January 12, 2012, seeking review of the trial court’s granting of a JNOV in favor of the plaintiffs. Cobb v. Mitchell, 2012 CW 0067.[1]
On February 3, 2012, the plaintiffs filed a motion for summary judgment, asserting that the parties had stipulated at trial that Mrs. Cobb’s present physical disabilities and injuries and medication consumed were caused by a contusion to the spinal cord during the March 11, 2002 surgery, and that there was no countervailing evidence introduced as to Mrs. Cobb’s damages. Following a hearing on the motion, the trial court granted summary judgment in favor of the plaintiffs, awarding $721,242.92 in damages, including general damages, past medical expenses, and loss of consortium. The trial court also decreed that Mrs. Cobb is in need of and is awarded future medical care and related benefits. The trial court rendered judgment in favor of plaintiffs and against Dr. Mitchell, the NeuroMedical Center, and LAMMICO in the amount $100,000.00 and rendered judgment in favor of plaintiffs and against the Louisiana Patient’s Compensation Fund in the amount $621,242.92.
Following the signing of the trial court’s judgment granting summary judgment in favor of plaintiffs and awarding damages, Dr. Mitchell, the NeuroMedical Center, and LAMMICO filed the instant appeal, seeking review of the trial court’s granting of the JNOV and a new trial on the issue of quantum and costs.
|fiDISCUSSION
A JNOV is a procedural device authorized by La. C.C.P. art. 1811, by which the trial court may modify the jury’s findings to correct an erroneous jury verdict. The Louisiana Supreme Court has set forth the standard to be used in determining whether a JNOV has been properly granted as:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded *696 men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. [Citations omitted.]
Davis v. Wal-Mart Stores, Inc., 00-0445, p. 4 (La.11/28/00), 774 So.2d 84, 89.
An appellate court reviewing a trial court’s grant of a JNOV employs the same criteria used by the trial court in deciding whether to grant the motion. Wood v. Humphries, 11-2161, p. 5 (La.App. 1st Cir.10/9/12), 103 So.3d 1105, 1110, writ denied, 12-2712 (La.2/22/13), 108 So.3d 769. In other words, the appellate court must determine whether the facts and inferences adduced at trial point so overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary finding of fact. Wood, 11-2161 at p. 5, 103 So.3d at 1110. If the answer is in the affirmative, then the appellate court must affirm the grant of the JNOV. Wood, 11-2161 at p. 5, 103 So.3d at 1110. However, if the appellate court determines that reasonable minds could differ on that finding, then the trial court erred in granting the JNOV, and the jury verdict should be reinstated. Wood, 11-2161 at pp. 5-6, 103 So.3d at 1110.
The requirement of consent to medical treatment was initially based on the idea that a competent person has the right to make decisions regarding his or her [ 7own body. Lugenbuhl v. Dowling, 96-1575, p. 4 (La.10/10/97), 701 So.2d 447, 450. The Louisiana informed consent statute, La. R.S, 40:1299.40, provides three methods of obtaining and proving informed consent of the patient. See Thibodeaux v. Jurgelsky, 04-2004, pp. 7-8 (La.3/11/05), 898 So.2d 299, 303-304; see also Price v. Erbe USA., Inc., 09-1076, p. 3 (La.App. 3d Cir.6/9/10), 42 So.3d 985, 988, writ denied, 10-1628 (La.10/8/10), 46 So.3d 1271. At the time of the alleged malpractice, La. R.S. 40:1299.40 provided, in pertinent part:[2]
A.(l) Notwithstanding any other law to the contrary, written consent to medical treatment means a handwritten consent to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
[[Image here]]
*697 C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (1) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases.
[[Image here]]
E.(2)(b) Consent to medical treatment may be evidenced according to the provisions of Subsections A and C of this Section or, as an alternative, a physician or other health care provider may choose to avail himself of the lists established by the Louisiana Medical | ^Disclosure Panel pursuant to the provisions of this Subsection as another method by which to evidence a patient’s consent to medical treatment.
[[Image here]]
(5)Before a patient or a person authorized to consent for a patient gives consent to any medical or surgical procedure that appears on the panel’s list requiring disclosure, the physician or other health care provider shall disclose to the patient, or person authorized to consent for the patient, the risks and hazards involved in that kind of care or procedure. A physician or other health care provider may choose to utilize the lists prepared by the panel and shall be considered to have complied with the requirements of this Subsection if the disclosure is made as provided in Paragraph (6) of this Subsection.
(6) Consent to medical care that appears on the panel’s list requiring disclosure shall be considered effective under this Subsection, if it is given in writing, signed by the patient or a person authorized to give the consent and by a competent witness, and if the written consent specifically states, in such terms and language that a layman would be expected to understand, the risks and hazards that are involved in the medical care or surgical procedure in the form and to the degree required by the panel under Paragraph (4) of this Subsection.
(7)(a) In a suit against a physician or other health care provider involving a health care liability or medical malpractice claim which is based on the negligent failure of the physician or other health care provider to disclose or adequately disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or other health care provider:
(i) Both the disclosure made as provided in Paragraph (5) of this Subsection and the failure to disclose based on inclusion of any medical care or surgical procedure on the panel’s list for which disclosure is not required shall be admissible in evidence and shall create a rebuttable presumption that the requirements of Paragraphs (5) and (6) of this Subsection have been complied with and this presumption shall be included in the charge to the jury;
* :|: *
(c) In order to be covered by the provisions of this Subsection, the physician or other health care provider who will actually perform the contemplated medical or surgical procedure shall:
(i) Disclose the risks and hazards in the form and to the degree required by the panel;
*698 (ii) Disclose additional risks, if any, particular to the patient because of a complicating medical condition, either told to the physician or other health care provider by the patient or his representative in a medical history of the patient or reasonably discoverable by such physician or other health care provider;
(iii) Disclose reasonable therapeutic alternatives and risks associated with such alternatives;
(iv) Relate that he is obtaining a consent to medical treatment pursuant to the lists formulated by the Louisiana Medical Disclosure Panel; and
(v) Provide an opportunity to ask any questions about the contemplated medical or surgical procedure, risks, or alternatives and acknowledge in writing that he answered such questions, to the patient | flOr other person authorized to give consent to medical treatment, receipt of which shall be acknowledged in writing.
At trial, Dr. Mitchell testified that Mrs. Cobb was referred to him by Dr. Stephen Wilson, an orthopedic surgeon, for surgical evaluation. Dr. Mitchell stated that he first saw Mrs. Cobb on February 1, 2002, at which time he took a history of the patient, conducted a physical examination of Mrs. Cobb, and reviewed her recent MRI scans. Dr. Mitchell stated that he diagnosed Mrs. Cobb with cervical spondy-losis and recommended that she undergo surgery with an interior cervical discecto-my at three levels. Dr. Mitchell said that he explained the risks of the surgery to Mrs. Cobb, including bleeding, infection, paralysis, continued neck pain, continued arm pain, trouble with bowels and bladder and stroke. Dr. Mitchell also stated that he went over the risk of non-treatment, paralysis. Dr. Mitchell stated that he did not discuss therapeutic alternatives with Mrs. Cobb, because based on her history she had already undergone all of the alternative treatments with no success. Additionally, Dr. Mitchell stated that on the day Mrs. Cobb came to the office to sign the consent forms, he did not meet with her and go over the forms. However, he stated that his physician’s assistant, John Merrill, met with Mrs. Cobb and obtained her signature on the forms.
Lorraine Cobb also testified at trial. Mrs. Cobb stated that she discussed surgery with Dr. Wilson, and he recommended that she see a neurosurgeon. Mrs. Cobb stated that during her visit with Dr. Mitchell, he told her she needed surgery for a bulging disc, and if she didn’t have surgery, she would become paralyzed. Mrs. Cobb stated that Dr. Mitchell did not discuss the risks of surgery with her at that visit and she did not ask any questions. Mrs. Cobb stated when she went back to Dr. Mitchell’s office on March 8, 2002, to sign the consent forms, she saw Mr. Merrill, who explained the procedure and gave her papers to sign. However, Mrs. | inCobb said that Mr. Merrill did not go over the form with her, and that she “glanced” over the consent form before signing it.
At trial, the defendants introduced a copy of a signed consent form into evidence. The consent form provides:
TO THE PATIENT: You have been told that you should consider medical treatment/surgery. Louisiana law requires us to tell you (1) the nature of your condition, (2) the general nature of • the medical treatment/surgery, (3) the risks [of] the proposed treatment/surgery, as defined by the Louisiana Medical Disclosure Panel or as determined by your doctor, and (4) reasonable therapeutic alternatives and material risks associated with such alternatives.
You have the right, as a patient, to be informed about your condition and the recommended surgical, medical or diag *699 nostic procedure to be used so that you may make the decision whether or not to undergo the procedure after knowing the risks and hazards involved.
In keeping with the Louisiana law of informed consent, you are being asked to sign a confirmation that we have discussed all these matters. We have already discussed with you the common problems and risks. We wish to inform you as completely as possible. Please read the form carefully. Ask about anything you do not understand, and we will be pleased to explain it.
Handwritten on the form is the patient’s name, Lorraine Cobb, a description of the treatmeni/procedure as “Anterior Cervical discectomy and Fusion with plating” which purpose is to “remove pressure from nerves.” The form also describes the patient’s condition as “cervical spondylosis.” Under section four, entitled “Material Risks of treatment procedure,” the form states:
(a) All medical or surgical treatment involves risks. Listed below are those risks associated with this procedure that we believe a reasonable person in your (the patient’s) position would likely consider significant when deciding whether to have or forego the proposed therapy. Please ask your physician if you would like additional information regarding the nature or consequences of these risks, their likelihood of occurrence, or other associated risks that you might consider significant but may not be listed below. ...
(b) Additional risks (if any) particular to the patient because of a complicating medical condition are: “see attached”
(c) Risks generally associated with any surgical treatment/proeedure, including anesthesia are: death, brain damage, disfiguring scars, quadriplegia (paralysis from neck down), paraplegia (paralysis form hiwaist down), the loss or loss of function of any organ or limb, infection, bleeding and pain.
Reasonable therapeutic alternatives and the risks associated with such alternatives are: “see attached”
The second page of the consent form states in bold that there are “No Guarantees,” states that the patient has had an opportunity to discuss with the physician providing such information the risks or other potential consequences of the medical treatment or surgical procedure and has had an opportunity to ask any questions she may have about the information in the document, and lists “Horace Mitchell” as the physician authorized to administer or perform the medical treatment, surgical treatment or other therapy. The second page is signed by Dr. Mitchell, dated March 8, 2002 at 1:55 pm, attesting that he had provided and explained the information set forth in the form including any attachments, and answered all questions of the patient concerning the medical treatment or surgical procedure. Lorraine Cobb also signed at the bottom of the second page, dated March 8, 2002, attesting that she had read and understood all the information set forth in the form and that she authorized Dr. Mitchell to administer or perform the medical treatment or surgical procedure described in item 2 of the consent form.
Attached to the consent form was a page entitled “Cervical Surgery,” This attachment lists additional risks of anterior cervical discectomy, with or -without fusion, as:
1. Death
2. Quadriplegia
3. Paraplegia
4. Increased pain and numbness
5. Hoarseness
*700 6. Failure of fusion (bone graft fails to stabilize)
7. Infection
8. Need for additional surgery
9. Continuation of the condition for which surgery was performed
10. Difficulty swallowing
11. Injury to the esophagus
12. Bowel or bladder dysfunction
|12The attachment also lists alternative treatments to cervical surgery as:
Non-steroidal anti-inflammatory drugs & other medications
Cervical traction
Physical therapy
“Live with” symptoms
Time
Bracing
This attachment is also signed by Lorraine Cobb on March 8, 2002.
In instructing the jury on the law of informed consent, the trial court read the portions of La. R.S. 40:1299.40 outlined above. After the jury retired for deliberation, the jury asked the court if it could provide a copy of the law on informed consent. Particularly, the jury wanted to know the requirements for the patient to be given consent and the format in which the patient receives the consent. In granting a JNOV in favor of the plaintiffs, the trial court determined that there existed “juror confusion with respect to the instruction and the law on informed consent, particularly, Paragraph E, which must be read in pari material [sic] with the foregoing other paragraphs.” We disagree.
The particular portion of La. R.S. 40:1299.40 relied on by the plaintiffs and the trial court in seeking and granting the JNOV is La. R.S. 40:1299.40E(7)(c), which states that “[i]n order to be covered by the provisions of this Subsection, the physician or other health care provider who will actually perform the contemplated medical or surgical procedure shall” disclose the required information to the patient. (Emphasis added.) However, the plain language of the statute states that that particular requirement is limited to the provisions found in that Subsection, being Subsection E. There is no such requirement in Subsection A or Subsection C, the alternative methods of obtaining and proving informed consent of a patient. See Price, 09-1076 at p. 5, 42 So.3d at 989-990.
Further, when the trial court was confronted with the jury’s request regarding restating the law of informed consent, the trial court, upon agreement of |1scounsel for both parties, reread the original instruction to the jury, detailing the contents of La. R.S. 40:1299.40. The trial court asked the jury if that was sufficient, to which the jury responded, “Thank you very much.” Therefore, the jury was charged with the correct principles of law to be applied to the issue before it, and based on the colloquy with the court, understood the law to be applied.
After reviewing the law and evidence applicable to the instant case, we find that a reasonable juror could have concluded that the plaintiffs failed to establish that Dr. Mitchell failed to obtain proper informed consent to the proposed medical procedure from Mrs. Cobb. The consent form sets forth the nature and purpose of the procedure, together with the known risks; acknowledges that such disclosure has been made and that all questions about the procedure have been answered in a satisfactory manner; and is signed by the patient. Further, although La. R.S. 40:1299.40A does not discuss the need to disclose alternative treatments, the jurisprudence has consistently held that such disclosure is encompassed within the duty to disclose material information to the *701 patient so that she may make an informed decision. See Hondroulis v. Schuhmacher, 553 So.2d 398, 418 (La.1989). The attachment to the form, which is also signed by Mrs. Cobb, discloses the alternative treatments available. Therefore, because the consent form and its attachment meet the requirements of La. R.S. 40:1299.40A and the jurisprudence, the written consent is entitled to a presumption of validity. See Thibodeaux, 04-2004 at p. 7 n. 7, 898 So.2d at 304 n. 7 (applying La. R.S. 40:1299.40A to a consent form provided by the Medical Disclosure Panel under La. R.S. 40:1299.40E). The fact that Mrs. Cobb merely “glanced” at the form does not defeat that presumption. See Price, 09-1076 at p. 12, 42 So.3d at 994.
Further, the record is devoid of evidence that Mrs. Cobb’s consent to the surgical procedure was induced by a misrepresentation of fact. The consent form described the procedure and its purpose, detailed Mrs. Cobb’s diagnosis and 114provided the material risks of the procedure and the reasonable therapeutic alternatives. There was no evidence that these facts were misrepresented to Mrs. Cobb, and the expert testimony presented at trial reinforced the information as related in the form. Therefore, from our review of the record, we find that the trial court erred in granting the JNOV in favor of the plaintiffs and in reversing the jury’s verdict. Likewise, the trial court erred in granting a new trial to determine the issues of quantum and costs.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court granting a JNOV in favor of the plaintiffs on the issue of informed consent and granting a new trial to determine quantum and costs. We reinstate the jury’s verdict in favor of the defendants, Dr. Horace Mitchell and the NeuroMedical Center, finding that the defendant, Dr. Horace Mitchell did not fail to obtain proper informed consent from Lorraine T. Cobb, together with the August 24, 2011 judgment rendered in accordance with the jury’s verdict. All costs of this appeal are assessed to the plaintiffs, Lorraine T. and Joseph Cobb.
REVERSED; WRIT DISMISSED.

. By action of this court, the defendants’ writ application was referred to the panel to which the appeal is assigned. See Cobb v. Mitchell, 2012 CW 0067 (La.App. 1st Cir.4/23/12)(unpublished writ action). However, because the December 29, 2011 judgment granting a JNOV in favor of the plaintiffs is now a final, appealable judgment, and the writ application raises the same issues raised in the appeal currently before us, we hereby dismiss the writ application as moot. See Code v. Department of Public Safety and Corrections, 11-1282, p. 5 n.6 (La.App. 1st Cir. 10/24/12), 103 So.3d 1118, 1123 n. 6, writ denied, 12-2516 (La. 1/23/13), 105 So.3d 59.

. In 2008, La. R.S. 40:1299.40(A)(1) was amended to read: "Notwithstanding any other law to the contrary, written consent to medical treatment means the voluntary permission of a patient, through signature, marking, or affirmative action through electronic means pursuant to R.S. 40:1299.40.1, to any medical or surgical procedure or course of procedures....” 2008 La. Acts, No. 738, § 1. In 2012, La. R.S, 40:1299.40 was repealed by 2012 La. Acts, No. 759, § 3; however, the substance of its provisions was reenacted in La. R.S. 40:1299.39.5 and 40:1299.39.6.